Keith C. Owens (CA State Bar No. 184841)
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, California  90071-2411
Telephone:   213.972.4500
Facsimile:    213.486.0065
Email:   *kowens@foley.com*

C. Luckey McDowell (TX State Bar No. 24034565)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas  75201-2980
Telephone:   214.953.6500
Facsimile:    214.661.6503
Email:   *luckey.mcdowell@bakerbotts.com*

**ATTORNEYS FOR CREDITOR YA GLOBAL INVESTMENTS, L.P.,
F/K/A CORNELL CAPITAL PARTNERS, L.P.**

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION**

| | |
|---|---|
| **In Re** | **Case No. 8:07: 12347-TA** |
| **COBALIS CORP,**<br>**a Nevada corporation,** | **Chapter 11 Proceeding** |
| **DEBTOR.** | **Adversary No. 08:09-ap-01705-TA** |
| **COBALIS CORP., A NEVADA CORPORATION,** | **EMERGENCY MOTION OF YA GLOBAL INVESTMENTS L.P. FOR PROTECTIVE ORDER** |
| **PLAINTIFF,** | **[FED. R. BANKR. P. 9018; 11 U.S.C. § 105(a); Local Bankruptcy Rule 9075-1(a)]** |
| **v.** | **Hearing** |
| **CORNELL CAPITAL PARTNERS, LP, YORKVILLE ADVISORS, LLC and YA GLOBAL INVESTMENTS, LP.,** | **DATE:  EMERGENCY HEARING**<br>        **REQUESTED**<br>**TIME:  TBD**<br>**CTRM:  5-B** |
| **DEFENDANTS.** |      **411 West Fourth Street**<br>     **Santa Ana, CA**<br>**JUDGE:    HON. THEODOR C. ALBERT** |

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE, AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that an emergency hearing has been requested by YA Global Investments, L.P., f/k/a Cornell Capital Partners, L.P., ("YA Global"), by and through its counsel, to have heard the *Emergency Motion of YA Global Investments L.P. for a Protective Order* (the "Motion").

By the Motion, YA Global will and hereby does ask the Court to (i) enter a protective order restricting Cobalis Corporation ("Cobalis" or the "Debtor"), its counsel, and any of their respective agents from disseminating certain information, and (ii) grant such other and further relief as the Court deems appropriate.

This Motion is based on the attached Memorandum of Points and Authorities and Declarations filed concurrently herewith, the file in this matter, and any additional evidence or argument that the Court decides to consider at the hearing thereon.

**PLEASE TAKE NOTICE** that, pursuant to Local Bankruptcy Rule 9075-1(a)(7), if you oppose the Motion, your response, written or oral, may be presented at the time of the emergency hearing on the Motion.

Dated: January 10, 2011.

                                        FOLEY & LARDNER LLP
                                        KEITH C. OWENS

                                        BY: */S/ KEITH C. OWENS*
                                            KEITH C. OWENS
                                            ATTORNEYS FOR CREDITOR YA
                                            GLOBAL INVESTMENTS, L.P.

                                            BAKER BOTTS L.L.P.
                                            RICHARD B. HARPER
                                            C. LUCKEY MCDOWELL

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

YA Global Investments, L.P. ("YA Global"), respectfully files this emergency motion (the "Motion") and states as follows:

4

### PRELIMINARY STATEMENT

5

6

7

8

9

10

11

12

13

1.    YA Global reluctantly requests an emergency hearing before this Court seeking a protective order to prevent Cobalis and its newest counsel from using an internet website to publicly disseminate personal information regarding YA Global's four partners and its legal counsel, mount vulgar personal attacks, advance its civil case with criminal threats, make damaging false accusations, and spread confidential information gained only through discovery in this legal proceeding.    YA Global's reputation—and potentially the safety of its principals and legal counsel—is threatened by every page view of the Cobalis-created website, and the damage cannot be undone.    Therefore, YA Global requests that this Court take immediate action to maintain the integrity of this proceeding and protect the interests of the litigants.

14

### RELIEF REQUESTED

15

16

2.    Pursuant to 11 U.S.C. §§ 105(a) and 107 and Fed. R. Bankr. P. 7026(c) and 9018, YA Global seeks entry of an order requiring Cobalis, its counsel, and their respective agents:

17

18

a) to remove immediately from any website, including but not limited to www.yagiscam.com, all documents, transcripts, and any other information obtained through discovery in this adversary action or in the underlying bankruptcy case;

19

20

b) to remove immediately from any website, including but not limited to www.yagiscam.com, all depictions of YA Global's principals and counsel;

21

c) to cease immediately threatening criminal prosecution of YA Global or its counsel absent further order of the Court;

22

23

d) to not issue any press release or future internet publication regarding this bankruptcy case or YA Global absent further order of the Court;

24

e) not to disclose to any third party any document, transcript, or any other information obtained through discovery in this adversary action or in the underlying bankruptcy case absent further order of the Court;

25

26

f) to remove immediately the website www.yagiscam.com in its entirety; and

27

g) to pay immediately YA Global for all costs and fees incurred in preparing, prosecuting, and enforcing this Motion.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SUMMARY OF RECENT EVENTS**

3.      On November 29, 2010, a new website was created called www.yagiscam.com.[1] Until very recently, that website raised copyright violation concerns but otherwise posed no imminent harm by leaking confidential documents or by disclosing personally identifying information.  The nature of the website drastically changed, however, on Friday, January 7, 2011. That Friday morning, counsel for YA Global received an automated email from Google Alerts advising that a new Wikipedia website had been created discussing YA Global.[2]  Any person— including existing and prospective investors and borrowers—who had requested a similar alert from Google received the same notice.  That Wikipedia site—which has since been removed as an impermissible attack site—referred browsers to a different site: www.yagiscam.com.  As of the filing of this Motion, YagiScam is still readily accessible to the public.

4.      The YagiScam website is registered to DomainsByProxy.com, a service marketed to give website owners a sense of anonymity.[3]  Upon request from YA Global's counsel, DomainsByProxy identified the "anonymous" registrant as Ramey Logan and provided contact information for Mr. Logan.[4]  The telephone number provided by DomainsByProxy for Ramey Logan matches the telephone number of Don Logan, a resident of Orange County.[5]  A separate Westlaw search confirms that the Don Logan at that same Orange County address also goes by Don R. Logan.[6]  Finally, a reverse IP address search revealed that the server that hosts the YagiScam website also hosts eight other websites, many of which confirm the identity of Don Ramey Logan.[7]

---

[1] *See* Exhibit 1 to the declaration of Luckey McDowell dated January 10, 2011 (the "McDowell Declaration").

[2] *See* Exhibit 2 to the McDowell Declaration.

[3] *See* Exhibit 1 to the McDowell Declaration.

[4] *See* Exhibit 3 to the McDowell Declaration.

[5] *See* Exhibit 4 to the McDowell Declaration.

[6] *See* Exhibit 5 to the McDowell Declaration.

[7] *See* Exhibit 6 to the McDowell Declaration.

1
2
3
4
5
6
7
8
9

5.      Further research revealed that the same Mr. Logan is a private investigator who is currently employed by the Law Firm of Gregory Grantham.[8]  Indeed, Mr. Logan's personal website lists Gregory Grantham's law office address as his own mailing address.[9]  Gregory Grantham—who has recently been retained by Cobalis to prosecute its Adversary Proceeding against YA Global— relies on Don Logan for more than just private investigations.  For example, the website for Mr. Grantham's law firm lists his firm's contact person as "Don Logan, Investigator."[10]  When the Grantham firm updated its website with the amended complaint filed in this case, the URL address refers to Logan-Investigations, indicating that Logan and Grantham are working together on this case.[11]

10
11
12
13
14
15
16
17

6.      More disturbingly, Messrs. Logan and Grantham have a history of using websites as part of smear campaigns to intimidate and exact revenge on opposing parties in litigation.  *See, e.g.,* www.brianjsmart.com and wikipedia.mrs.brianjsmart.com.   In the Smart case, Mr. Grantham represented Mr. Logan as a creditor and Mr. Grantham created a website, <u>of which his law firm is the registered owner</u>, entitled www.brianjsmart.com.[12]  That website, plus an anonymous[13] Wikipedia site attacking the defendant's wife, includes details of the defendant's family life, personal photos, and contact information alongside harrowing descriptions of fraud and deceit.[14] The impact of such a website is to threaten and intimidate the target.

18
19
20
21
22
23
24
25
26
27
28

[8] *See* <u>Exhibit 7</u> to the McDowell Declaration.

[9] *See* <u>Exhibit 16</u> to the McDowell Declaration.

[10] *See* <u>Exhibit 8</u> to the McDowell Declaration.

[11] *See* <u>Exhibit 9</u> to the McDowell Declaration.

[12] *See* <u>Exhibit 10</u> to the McDowell Declaration.

[13] The Wikipedia website is not as anonymous as Mr. Logan and Mr. Grantham might like to believe.  When visited recently, the website blocked YA Global's access and instead redirected YA Global to the same expletive-laced website used on the YagiScam website.  *See* <u>Exhibit 17</u> to the McDowell Declaration.

[14] *See* <u>Exhibits 11 & 12</u> to the McDowell Declaration.

7.      Cobalis is now advancing a similar smear campaign against YA Global.   The YagiScam website[15]:

- falsely blames YA Global for Cobalis' failure;

- falsely casts YA Global as a "famous" RICO defendant that is subject to imminent criminal prosecution;

- misrepresents the website as a government-protected website for use solely by law enforcement;

- falsely accuses the president and founder of YA Global as having filed for personal bankruptcy, despite the fact that this wild theory was debunked in discovery last Spring;

- identifies each of the four principals of YA Global by name and photograph;

- identifies an image of a gorilla as David Gonzalez, a partner and general counsel for YA Global, and states his date of birth for no reason other than harassment;

- attaches the complete deposition transcript of YA Global's president and other witnesses, which contains personally identifiable information including home addresses;

- shares YA Global's detailed trading records that were produced on an attorneys–eyes only basis;

- identifies YA Global's counsel, Messrs. Harper and McDowell, by name and photograph and refers to them as "scumbags" and "used condoms;" and

- misquotes the Honorable Judge Albert as having referred to YA Global as a loan shark.

8.      Once Cobalis and its counsel learned that YA Global had discovered the site, Cobalis blocked some of YA Global's IP addresses from accessing the site.  Instead of seeing the site—which was still visible to the remainder of the world—YA Global was instead directed to an even more offensive website.  Copies of the redirected site, most of which is too vulgar to be repeated here, are attached as Exhibits 14 and 15 to the McDowell Declaration.  As the Court will see, the redirected site is laced with profanities, threatens to pursue criminal action and refer YA Global to an alphabet soup of government agencies, refers to YA Global and its counsel as "murderers," identifies YA Global's counsel by name, and ends the message with the not-so-vague threat "see you at the 12b in Albert's court, punk . . . ."[16]

---

[15] *See* Exhibit 13 to the McDowell Declaration.

[16] As Friday progressed, Cobalis updated and revised the main YagiScam page, as well as the blocked page directed at YA Global.  Copies of the websites, in their various forms, are attached.

1
2
3
4

9.      On Friday evening, Cobalis filed its fourth complaint in the Securities Adversary Proceeding, raising for the first time preposterous RICO allegations and seeking more than $100 million in damages.  Gregory Grantham also made his first appearance in this case as Cobalis' sixth counsel of record in these cases.

5

## LEGAL ARGUMENT

6

### A.    A Protective Order is Necessary

7
8
9
10
11
12
13

10.      In response to a request for a protective order, "the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue expense or burden . . ."  FED. R. BANKR. P. 7026(c). Protective orders serve an important function, as one court noted, "[w]ithout an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless annoyance, embarrassment, oppression, or undue burden or expense." *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001).

14
15
16
17
18
19
20
21
22
23
24
25
26

11.      While a showing of "good cause" is required for a protective order, Rule 7026 confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).  Good cause exists if harm is likely to result if no protective order is granted. *Id.*  The Ninth Circuit has recognized several factors, which are neither mandatory nor exhaustive, that the trial court may consider in its "good cause" analysis:  1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public heath and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (9th Cir. 1995).

27
28

1     12.    The factors identified above support a protective order in favor of YA Global.  First,

2 the Debtor's website blatantly violates the privacy interests of the YA Global's principals by

3 including home addresses, dates of birth, and identifying photographs.  Second, the YagiScam

4 website is a reservoir of defamatory statements designed solely to create public scandal where none

5 exists.  *See Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 10

6 (1st Cir. 2005) (defining "improper purpose").  Third, the YagiScam website is designed as a

7 vehicle for misconstruing this Court's files in order to harass and cause embarrassment for YA

8 Global's management and counsel.  Fourth, the protective order does not extend to information

9 important to public health and safety.  Based on the allegations and threats on the website, *failing to*

10 *limit* the Debtor's use of information may in fact endanger the reputation and safety of YA Global's

11 management and attorneys.  Finally, allowing the Debtor to use the fruits of discovery—much of

12 which was produced on an attorneys' eyes only basis—does not promote fairness or efficiency.  The

13 Debtor's conduct falls woefully short of the decorum required of litigants in federal court, has

14 forced the parties to litigate over yet another ancillary matter, and could further delay a final

15 adjudication of the disputes between YA Global and the Debtor.

16     13.    Publishing the information online in the manner in which counsel has chosen only

17 accentuates the need for a protective order.  "When published online, discovery materials are often

18 taken out of context and extrajudicial statements are almost always biased. The resulting slanted

19 presentation of facts creates a significant risk of prejudicing the jury pool, causes unnecessary court

20 battles, and implicates the right to a fair trial."  Andrew Kopon & Sarah E. Flotte, *What To Do*

21 *When Opposing Counsel Uses The Internet As A Weapon: Tools To Combat The Publication Of*

22 *Discovery Materials And Extrajudicial Statements On The Internet*, Trial Techniques and Tactics,

23 IADC Committee Newsletter (March 2010), *available at* http://www.iadclaw.org/assets/publication

24 /TrialTechniques&Tactics_March_2010.pdf;  *see also Baker v. Buffenbarger*, No. 03-C-5443, 2004

25 WL 2124787, *4 (N.D. Ill. Sept. 22, 2004)(entering protective order prohibiting plaintiffs from

26 posting deposition transcript online where plaintiffs "intend to use Defendants' deposition

27 testimony to further their crusade of criticizing and embarrassing Defendants").

28

**B.    This Court has Inherent Power to Customize Its Protective Order**

14.    The incendiary atmosphere created by Cobalis' counsel has no place in this courtroom or the legal profession, and this Court should craft an order to ensure that this type of behavior is not repeated in this case. "[A] court is not limited to the eight specified types of orders . . . [it] may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule." 8A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice and Procedure § 2036 (3d ed. 2010); *see also Ann L. v. X Corp.*, 133 F.R.D. 433, 435 (W.D.N.Y. 1990) ("[A]n order of suppression is a permissible remedy under the 'catch all clause' of Fed.R.Civ.P. 26(c)."). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co.*, 467 U.S. at 36.

15.    Federal courts are vested with inherent powers to manage their cases and courtrooms, and maintain the integrity of the judicial system. *In re Brooks-Hamilton*, 400 B.R. 238, 246 (B.A.P. 9th Cir. 2009) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991)). Indeed, it is imperative that the courts maintain the necessary authority to manage the arguments and conduct of parties to ensure judicial efficiency. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980).

16.    The inherent equitable power of courts to craft protective orders is well-established. *See Seattle Times Co.*, 467 U.S. at 35. ("[W]e have no question as to the court's jurisdiction to [enter protective orders] under the inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices") (internal quotation omitted); *Int'l Prods. Corp. v. Koons*, 325 F.2d 403, 407-08 (2d Cir.1963); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir. 1994) ("Courts have inherent power to grant orders of confidentiality .... whether or not such orders are specifically authorized by procedural rules."). Moreover, the Supreme Court has specifically recognized a trial court's power to tailor a protective order to address the circumstances at hand. *See Seattle Times*, 467 U.S. at 36 ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.").

1    17.    Section 105 of the Bankruptcy Code further codifies the Court's inherent powers.

2    *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 412 (B.A.P. 9th Cir. 2005); *see, e.g., Caldwell v.*

3    *Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 285 (9th Cir. 1996) (imposing

4    sanctions on debtor's principal under inherent powers acknowledged in section 105).  Under section

5    105, the Court may "issue any order, process, or judgment that is necessary or appropriate to carry

6    out the provisions of this title."  11 U.S.C. § 105(a).  This includes the authority to sanction

7    vexatious conduct presented before the Court.  *In re Rainbow Magazine*, 77 F.3d at 284.  Debtor's

8    counsel's behavior so offends the decorum required of attorneys and litigants as to warrant an

9    exercise of the Court's inherent powers.

10    18.    Where relying on section 105(a) to enforce general principles, the Court may look to

11    other relevant statutes to support the exercise of its inherent powers.  *See, e.g., Johnson v. McDow*

12    *(In re Johnson)*, 236 B.R. 510, 521 (D.D.C. 1999) (Rule 12(f) provided persuasive support for

13    motion under Rule 105 to strike matter from a paper rather than a pleading).  Here, the Court is

14    vested with express authority to, on its own initiative and without notice, make "any order which

15    justice requires . . . to protect any entity against scandalous or defamatory matter contained in any

16    paper filed in a case under the Code."  FED. R. BANKR. P. 9018(2).  Likewise, section 107(b) of the

17    Bankruptcy Code permits the Court to protect a person with respect to any scandalous or

18    defamatory matter where the material is untrue or where the material is potentially untrue and

19    irrelevant or submitted for an improper purpose.  *See Gitto*, 422 F.3d at 10; *Jensen v. Neilson (In re*

20    *JMS Auto. Rebuilders, Inc.)*, No. 01-05600DDP, 2002 WL 32817517, at *2 (C.D. Cal. Jan. 15,

21    2002).  Examples of such improper purposes include "gratifying public spite, promoting public

22    scandal, and using court files as reservoirs of libelous statements for press consumption."  *See Gitto*,

23    422 F.3d at 12 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)) (internal

24    quotations omitted).

25    **C.    An Order Restricting Extrajudicial Statements is Also Necessary**

26    19.    The Court may issue a order to prevent the continued or additional extrajudicial

27    dissemination of prejudicial and harmful information by the participants in this case. The Supreme

28

1
2
3
4
5
6
7
8
9
10
11
12

Court has encouraged such an order when it might "have prevented the divulgence of inaccurate information, rumors, and accusations . . . ." and has upheld such orders under First Amendment scrutiny. *See Sheppard v. Maxwell*, 384 U.S. 333, 360 (1966); *U.S. v. Brown*, 218 F.3d 415, 425 (2000).  Because the information is being spread by a trial participant, the standard applied in less stringent than that applied to the press. *Brown*, 218 F.3d at 425 (recognizing a "distinction between participants in the litigation and strangers to it").  In *Gentile v. State Bar of Nevada*, the Supreme Court stated that language in a Nevada Supreme Court rule prohibiting attorneys from making extrajudicial comments to the media that the attorney knew or should have known would "have a substantial likelihood of materially prejudicing an adjudicative proceeding" was a "constitutionally permissible balance between the First Amendment rights of attorneys . . . and the State's interest in fair trials." 501 U.S. 1030, 1075 (1991). The same language and standard are used in the California Rules of Professional Conduct:

13
14
15
16

> A member who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the member knows or reasonably should know that it will *have a substantial likelihood of materially prejudicing an adjudicative proceeding* in the matter.

Rule 5-120(a) (emphasis added).

17
18
19
20

20.      Because Cobalis has demanded a jury trial in its most recent complaint, threats and fraudulent statements—in addition to the proliferation of materials and knowledge gained through discovery—may materially prejudice the outcome of this proceeding.  An order tailored to curtail further behavior from the trial participants in this case is warranted.

21

**D.      Cobalis Has No Right to Share Information Gained Through Discovery**

22
23
24
25
26
27

21.      While Rule 26 generally contemplates broad, public discovery, the Rule does not sanction the misuse of the judicial system and the discovery procedures. *See Seattle Times Co.,* 467 U.S. at 31 ("It does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery.")  In *Seattle Times*, the United States Supreme Court unanimously held that because "[a] litigant has no First Amendment

28

1    right of access to information made available only for purposes of trying his suit . . . continued court

2    control over the discovered information does not raise the same specter of government censorship

3    that such control might suggest in other situations." *Seattle Times Co.*, 467 U.S. at 32.  As the

4    U.S. Supreme Court explained:

5
> As in all civil litigation, [respondents] gained the information they
6
> wish to disseminate only by virtue of the trial court's discovery
> processes.  As the Rules authorizing discovery were adopted by the
7
> [federal] legislature, the processes thereunder are a matter of
> legislative grace.  A litigant has no First Amendment right of access
8
> to information made available only for purposes of trying his suit.

*Id.*
9
                                            <u>**CONCLUSION**</u>
10
        22.      YA Global understands that requests for emergency hearings are a burden on a busy
11
Court, and YA Global does not make the request for an emergency hearing lightly.  However, the
12
website in question has the potential to cause very real and lasting harm to YA Global, its managing
13
members, attorneys, and investors, as well as the numerous public companies in which it invests.
14
Moreover, the website is not only a harmful and abusive use of discovery materials, but it uses the
15
protected materials in support of knowingly fraudulent claims.  Finally, while the imposition of
16
sanctions perhaps does not warrant emergency consideration,[17] YA Global does need for this Court
17
to stop these actions immediately.  Once a Google Alert locates the YagiScam website, the Court
18
will be unable to unwind the resulting harm.
19
        23.      If the Court does not take immediate action to stop counsel's tactics, litigants will
20
draw the conclusion that these tactics are fair game.  In that event, counsel fears that the dispute will
21
quickly escalate out of control resulting in untold harms.
22
        WHEREFORE, YA Global respectfully requests that this Court grant the Motion and such
23
other and further relief as the Court deems appropriate.
24

25

26
_____
[17] Rule 11 requires that parties seeking sanctions provide opposing counsel with at least 21 days advance notice, but
27    notably Rule 11 does not require delay when a court imposes sanctions on its own initiative.

28

1  Respectfully submitted this 10th day of January 2011.

2

3                                          FOLEY & LARDNER LLP
                                           KEITH C. OWENS

4

5                                          BY: */S/ KEITH C. OWENS*
                                               KEITH C. OWENS

6                                          BAKER BOTTS L.L.P.
                                           RICHARD B. HARPER
7                                          C. LUCKEY MCDOWELL

8                                          COUNSEL TO YA GLOBAL INVESTMENTS, L.P.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAL02:578081.2                                                      Page 13 of 13