Keith C. Owens (CA State Bar No. 184841)
**FOLEY & LARDNER LLP**
555 South Flower Street, 35th Floor
Los Angeles, California  90071-2411
Telephone:    213.972.4500
Facsimile:    213.486.0065
Email:    *kowens@foley.com*

Richard B. Harper (NY State Bar No. 4596615)
Kristin E. Flood (NY State Bar No. 4700811)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza, 44th Floor
New York, NY  10112
Telephone:    212.408.2500
Email:    *richard.harper@bakerbotts.com*
Email:    *kristin.flood@bakerbotts.com*

C. Luckey McDowell (TX State Bar No. 24034565)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas  75201-2980
Telephone:    214.953.6500
Email:    *luckey.mcdowell@bakerbotts.com*

ATTORNEYS FOR DEFENDANTS YORKVILLE ADVISORS, LLC,
YA GLOBAL INVESTMENTS, L.P., F/K/A CORNELL CAPITAL PARTNERS, LP

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| IN RE<br><br><br>COBALIS CORP., A NEVADA CORPORATION,<br><br>DEBTOR. | CASE NO. 8:07: 12347-TA<br><br>CHAPTER 11 PROCEEDING |
| COBALIS CORP., A NEVADA CORPORATION,<br><br>PLAINTIFF,<br><br>V.<br><br>CORNELL CAPITAL PARTNERS, LP,<br><br>YORKVILLE ADVISORS, LLC AND YA<br><br>GLOBAL INVESTMENTS, LP,<br><br>DEFENDANTS. | ADVERSARY NO. 08:09-AP-01705-TA<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    April 14, 2011<br>Time:    11:00 a.m.<br>Place:    Courtroom 5B<br>          411 West Fourth Street, Santa Ana<br><br>Hon. Theodor C. Albert |

NY02:702198.3

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 3

PROCEDURAL AND FACTUAL BACKGROUND........................................... 3

    I.    Procedural Background................................................................... 3

    II.    Factual Background ...................................................................... 5

        A.    The Parties ......................................................................... 5

        B.    In Late 2006, Yorkville Negotiates with and Agrees to Invest Funds in Cobalis ......................................................................... 6

        C.    Trading Agreements and Restrictions Explicitly Defined in Written Agreements. ...................................................................... 7

        D.    Spring of 2007:  Performance under the Written Agreements ......... 8

        E.    Summer of 2007:  Cobalis' FDA Trials Fail and the Stock Price Plummets ... 8

        F.    Cobalis' Shorting Allegations Against Yorkville ........................... 9

        G.    Cobalis Defaults and Yorkville Places Cobalis into Bankruptcy ..................... 9

LEGAL ANALYSIS............................................................................ 10

    I.    Cobalis Fails to Cure Previously Dismissed Claims (the "Old" Causes of Action)... 10

        A.    Cobalis Fails to Plead a Cause of Action for Section 10(b) and Rule 10b-5 Federal Securities Fraud (Count III) ................................. 11

        B.    Interference with Prospective Economic Advantage (Count IX) ................... 15

        C.    Breach of Contract: Securities Purchase Agreement (Count I) ...................... 18

        D.    Breach of Contract: Debenture Agreement (Count II) ................................. 20

        E.    Declaratory Relief and Injunctive Relief (Count VII) ................................... 20

    II.    Cobalis' New Claims Fail to Survive Scrutiny (the "New" Causes of Action).......... 21

        A.    Cobalis Fails to Plead a Cause of Action for Section 17(a)(1) Federal Securities Fraud (Count IV)................................................... 21

        B.    Cobalis Fails to Plead a Cause of Action for RICO Violations (Count V)..... 21

        C.    Cobalis Fails to Plead a Cause of Action for Unjust Enrichment and Restitution (Count VI) ...................................................... 23

        D.    Cobalis Fails to Plead a Cause of Action for Unfair Business Practices (Count VIII) ......................................................................... 24

III.    Cobalis' Third Amended Complaint Should Be Dismissed with Prejudice ............... 25

CONCLUSION ........................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Adams v. New York State Education Dept.,
  No. 8 Civ. 5996, 2010 WL 4970011 (S.D.N.Y. 2010) ............................................................11

Affco Inv. 2001, LLC v. Proskauer Rose, L.L.P.
  625 F.3d 185 (5th Cir. 2010) ...............................................................................................22

Allen v. City of Beverly Hills,
  911 F.2d 367 (9th Cir. 1990) ...............................................................................................25

Ashcroft v. Iqbal,
  129 S.Ct. 1937 (2009) ...............................................................................................2, 10, 20

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
  493 F.3d 87 (2d Cir. 2007) ...........................................................10, 11, 12, 13, 14, 15

Bell Atl. Corp. v. Twombly,
  127 S.Ct. 1955 (2007) ...............................................................................................2, 10, 20

Burnett v. Rowzee,
  -- F.Supp.2d --, 2007 WL 2735682 (C.D. Cal. 2007) ...........................................................22

Coleman v. Am. Home Mortgage Servicing,
  No. CV-09-02692-PHX-ROS, 2010 WL 3283564 (D. Ariz. 2010) .........................................25

Delareto v. Totaro,
  -- A.3d --, 2010 WL 3834365 (N.J. Super. App. Div. 2010) .................................................19

Eagletech Comm'ns v. Citigroup, Inc.,
  -- F.Supp.2d --, 2008 WL 3166533 (S.D. Fla. 2008) ...........................................................22

Gene R. Smith Corp. v. Terry's Tractor, Inc.,
  209 Cal.App.3d 951 (Cal.Ct.App. 1989) ..............................................................................17

Glannon v. Garrett & Assocs., Inc.,
  261 B.R. 259 (D. Kan. 2001) ...............................................................................................16

Gonzales v. Parks,
  830 F.2d 1033 (9th Cir. 1987) ...............................................................................................16

Hamilton v. Bank of Blue Valley,
  -- F.Supp.2d --, 2010 WL 4222724 (E.D. Calif., Oct. 20, 2010) ..........................................24

Howard v. Am. Online Inc.,
    208 F.3d 741 (9th Cir. 2000) .........................................................................2, 22

In re Silicon Graphics, Inc. Sec. Litig.,
    183 F.3d 970 (9th Cir. 1987) ...............................................................................14

In re VeriFone Sec. Litig.,
    11 F.3d 865 (9th Cir. 1993) .................................................................................10

In re Washington Pub. Power Supply Sys. Sec. Litig.,
    823 F.2d 1349 (9th Cir. 1987) .........................................................................2, 21

Kearns v. Ford Motor Co.,
    567 F.3d 1120 (9th Cir. 2009) .............................................................................25

Kelly v. Arato,
    -- A.2d. --, 2009 WL 3849664 (N.J. 2009) .........................................................19

Koffman v. Osteoimplant Tech., Inc.,
    182 B.R. 115 (D. Md. 1995) ................................................................................16

Marks v. Struble,
    347 F. Supp. 2d 136 (D.N.J. 2004) ......................................................................15

Mason v. Smith,
    672 A.2d 705 (N.H. 1996) ...................................................................................16

Metzler Inv. GMBH v. Corinthian Colleges, Inc.,
    540 F.3d 1049 (9th Cir. 2009) .............................................................................25

Miles v. Okun (In re Miles),
    430 F.3d 1083 (9th Cir. 2005) ....................................................................3, 16, 23

Raymark Indus., Inc. v. Baron,
    No. CIV. 96-7625, 1997 WL 359333 (E.D. Pa. June 23, 1997) ...........................16

Silverstein v. Keane,
    115 A.2d 1 (N.J. 1955) .........................................................................................19

Swartz v. KPMG,
    476 F.3d 756 (9th Cir. 2007) ...............................................................................22

Sybersound Records, Inc. v. UAV Corp.,
    517 F.3d 1137 (9th Cir. 2008) .............................................................................21

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    127 S.Ct. 2499 (2007) ..........................................................................................13

United States ex rel. Chunie v. Ringrose,
    788 F.2d 638 (9th Cir. 1986) ....................................................................................10

Weisgarber v. N.J. Dep't of Cmty. Affairs, Div. of Codes and Standards,
    -- A.2d --, 2009 WL 3170438 (N.J. Super. A.D. 2009) ............................................18

Wilcox v. First Interstate Bank of Oregon, N.A.,
    815 F.2d 522 (9th Cir. 1987) ....................................................................................21

Zucco Partners, LLC v. Digimarc Corp.,
    552 F.3d 981 (9th Cir. 2009) ........................................................................10, 11, 13

STATUTES

11 U.S.C. 303 ........................................................................3, 16, 18, 23, 24, 25

15 U.S.C. § 78u-4(b)(2) ........................................................................................13

17 C.F.R. § 242.200(g)(1) .....................................................................................19

18 U.S.C. § 1961(1) ...............................................................................................21

California Business & Professions Code § 17200 .............................................24, 25

Federal Rule of Bankruptcy Procedure 7012 ..........................................................10

Federal Rule of Civil Procedure 9(b) ...........................................2, 3, 11, 14, 15, 22

Federal Rule of Civil Procedure 12(b)(6) ...............................................................10

Private Securities Litigation Reform Act of 1995 ........................................11, 13, 14

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES
BANKRUPTCY JUDGE:**

Yorkville[1] hereby moves this Court (the "Motion") to dismiss all claims asserted in

Cobalis Corporation's ("Cobalis") Third Amended Complaint (the "Third Amended Complaint")

filed on January 7, 2011.  This Motion is based on the Notice of Motion, the Memorandum of

Points and Authorities herein, the Declaration of Richard B. Harper filed concurrently herewith

(the "Harper Decl."), the pleadings and other documents on file with this Court, and on such

further oral and documentary evidence as may be presented at the hearing on the Motion.  In

support of the Motion, Yorkville states as follows:

<u>**PRELIMINARY STATEMENT**</u>

Cobalis' fourth attempt at stating a claim against Yorkville fails because it (1) reasserts

causes of action previously dismissed by this Court without new substantial factual allegations or

legal theories and (2) re-labels previously rejected fact allegations as "new" causes of action that

simply do not withstand even the most basic legal scrutiny.  In doing so, Cobalis incredibly

continues, in the face of this Court's repeated admonishments, to ignore basic uncontroverted

facts such as Cobalis' unsuccessful FDA Phase III trials and their negative impact on the  stock

price.  Indeed, in reasserting old claims and re-labeling old facts as "new" causes of action,

Cobalis calls into question whether it has a good faith reasonable basis for filing the Third

Amended Complaint.

**The "Old' Causes of Action**.  Cobalis reasserts five causes of action previously rejected

by this Court in its Order Granting YA Global Investments, L.P., f/k/a Cornell Capital Partners,

LP's Motion for Judgment on the Pleadings, dated January 14, 2011 (the "Dismissal Order"):

    1.  <u>Securities Fraud:  Section 10(b) of the '34 Act (Count III)</u>.  The Dismissal
       Order rejected Cobalis' claim for Section 10(b) securities fraud on three
       alternative grounds:  (a) misstatement/market manipulation; (b) scienter/intent;

---

[1]  Yorkville Advisors LLC ("Yorkville Advisors") is the Investment Manager to a family of funds of which YA Global Investments, LP ("YA Global") is one such fund.  YA Global is the result of a name change and was formerly known as Cornell Capital Partners, LP. ("Cornell").  Yorkville Advisors, YA Global, and Cornell will collectively be referred to in this brief as "Yorkville."

and (c) causation/damages.  Neither the result nor the rationale for the previous dismissal of this claim changes here despite Cobalis' schizophrenic expansion of its improper trading allegations.

2. <u>Interference with Prospective Economic Advantage (Count IX)</u>.  Cobalis' interference with economic advantage allegations are nearly identical to those previously dismissed.  This Court's ruling that Cobalis' pleading was inconsistent with a creditor's rights under bankruptcy law, was barred by the doctrine of estoppel and/or preempted by the Bankruptcy Code, and failed to meet Rule 9(b) pleading requirements remains applicable and appropriate.

3. <u>Contract:  Short Sales (Count I)</u>.  The Court properly rejected prior short sale allegations as inconsistent with the parties' agreements, contradicted by federal definitions of short selling and based on unenforceable oral agreement allegations.  The latest complaint offers nearly identical allegations with an expanded <u>number</u> of trades, but using the same short sale theory rejected in the Dismissal Order.  Cobalis' theory should be rejected again.

4. <u>Contract:  4.99% Ownership Cap (Count II)</u>.  This Court held in the Dismissal Order that Cobalis' allegations regarding violation of a 4.99% ownership cap flatly failed under the <u>Iqbal</u> and <u>Twombly</u> pleading standards.  <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1974 (2007); <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).  The allegations in the Third Amended Complaint are effectively identical and simply do not change the analysis or the result.

5. <u>Declaratory Relief and Injunctive Relief (Count VII)</u>.  Again, Cobalis offers "clean up" causes of action for declaratory and injunctive relief that are dependent on the Court finding other causes of action stated.  As with the Dismissal Order, the Court should dismiss Count VII based on Cobalis' failure to otherwise state a viable cause of action.

**The "New" Causes of Action**.  Cobalis fares no better repackaging old allegations into new causes of action:

1. <u>Securities Fraud:  Section 17(a)of the '33 Act (Count IV)</u>.  The Ninth Circuit for over 30 years has found no private right of action under Section 17(a) for securities fraud.  <u>In re Washington Pub. Power Supply Sys. Sec. Litig.</u>, 823 F.2d 1349 (9th Cir. 1987).  Cobalis' attempt to plead it here is frivolous.

2. <u>Federal RICO Allegations (Count V)</u>.  In 1995, Congress amended the federal RICO statute, narrowing the type of conduct that qualifies as a RICO predicate act and eliminating a predicate that relies on securities fraud.  <u>Howard v. Am. Online Inc.</u>, 208 F.3d 741, 749-50 (9th Cir. 2000).  Even a cursory review of the Third Amended Complaint establishes that Cobalis' RICO claim is impermissibly based on securities fraud predicate act allegations.  Third Am.

Compl. ¶ 59(b) ("Making intentional, false representations, or concealing and omitting to state material facts and inside information to buyers of Plaintiff's stock <u>in connection with sales of stock</u> . . . .") (emphasis added).  As such, this claim should also be dismissed as frivolous.

3.  <u>Unjust Enrichment: Wrongfully Forcing Cobalis into Bankruptcy (Count VI)</u>. The Dismissal Order held that Cobalis' allegations of a wrongfully filed bankruptcy are precluded because the parties' filed a stipulation that the propriety of the involuntary petition would not be challenged and the allegations were insufficient under Rule 9(b).  Dismissal Order at 11.  In addition, claims based on improper involuntary bankruptcy allegations are completely preempted by Section 303(i) of the Bankruptcy Code.  <u>Miles v. Okun (In re Miles)</u>, 430 F.3d 1083 (9th Cir. 2005).

4.  <u>Unfair Business Practices (Count VIII)</u>.  In the ultimate repackaging of previously rejected factual allegations, Cobalis alleges as unfair business practices all of its theories, ranging from the same alleged securities fraud to the alleged breaches of contract.  For all the reasons these underlying claims fail individually, they easily fail under an unfair business practices label.

Cobalis has now had <u>four</u> opportunities to file complaints to state a cause of action. Cobalis has had the advantage of a bankruptcy estimation proceeding with extensive discovery, cross-examination of witnesses, expert witness testimony, and a comprehensive written opinion by this Court regarding problems with Cobalis' theories.  Despite this, Cobalis has been unsuccessful at every turn and this latest attempt fares no better.  The Third Amended Complaint should be <u>dismissed</u> <u>with</u> <u>prejudice</u>.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

### I.  Procedural Background

Cobalis filed its original Complaint in this matter on November 9, 2009 (the "Original Complaint"), directing its allegations primarily against Yorkville's allegedly impermissible "short sales" in Cobalis stock.  <u>See</u>, <u>e.g.</u>, Original Compl. ¶¶ 27, 29, 41-42, 47-48, 52-54, 90-95. The alleged shorting scheme was breathtaking in scope: that Yorkville traded shares of Cobalis stock before Cobalis' registration statement went effective and continued to short over five million shares of Cobalis stock in a three-and-a-half month period in 2007.  <u>Id.</u> at ¶¶ 47-48. These shorting allegations formed Cobalis' central assertion and the basis for three of the

Original Complaint's five causes of action, ranging from fraud to breach of contract allegations. Id. at ¶¶ 56-72, 80-109 (Counts I, II, IV, and V of Original Complaint).

In response to the Original Complaint, Yorkville filed a motion and this Court put a procedure in place for and held an estimation hearing for voting purposes (the "Estimation Hearing"). See Emergency Mot. of YA Global Investments, L.P. to Estimate Its Secured Claim for Voting Purposes and to Establish Procedures for Such Estimation, filed November 23, 2009; Court's Order of November 23, 2009 at 2 (the "November 23 Order"). The parties conducted an expedited discovery process in which twelve depositions were taken, thousands of pages were produced, experts were retained, and multiple trial briefs were filed. See generally Cobalis' Opp'n to Mem. in Support of YA Global Investments, L.P.'s Emergency Mot., filed March 5, 2010, at 19. Depositions of Yorkville employees ranged from the head of Yorkville to its compliance officer to one of its traders. See generally Mem. in Support of YA Global Investment, L.P.'s Emergency Mot., filed March 1, 2010, at 8, 12. Depositions of Cobalis included current and former executives of the company. Id. at 12, 15. The parties also deposed competing experts regarding the trading-based theories that Cobalis asserted. See, e.g., Cobalis' Opp'n to Mem. in Support of YA Global Investments, L.P.'s Emergency Mot., filed March 5, 2010, at 6-11. The Court held the Estimation Hearing on March 10, 2010 and March 16, 2010.

On March 19, 2010, the Court issued its decision in favor of Yorkville. See Statement of Decision Regarding Estimation and Valuation of YA Global Investments, L.P.'s Claim (the "Estimation Order"). In the Estimation Order, the Court concluded that "the allegations of a conspiracy, fraud, etc., are vastly overblown," and that Cobalis' "after-the-fact arguments that YA Global somehow lulled [Cobalis] into complacency so as to overlook the black and white provisions of the agreements are not supported in the evidence." Estimation Order at 8. The Court correctly focused on the lack of any link between Yorkville's trading in the stock and the obvious impact of the "inconclusive" Phase III FDA trials: "It was the delay in the reporting of the Phase III trial of May 31, 2007 and then the announcement July 6, 2007 that the Phase III

trials were 'inconclusive' that tanked the stock." Id. (citations to exhibits omitted). The Court found "no basis for any reduction by way of offset," valuing Cobalis' setoff claim at $0. Id. at 9.

Following the Court's Estimation Order, Cobalis twice amended the unsuccessful Original Complaint. On May 17, 2010, Cobalis filed its First Amended Complaint. On September 20, 2010, Cobalis filed its Second Amended Complaint. In response, on October 18, 2010, Yorkville filed its Answer and on November 8, 2010, filed its Motion for Judgment on the Pleadings.

After holding an extensive oral argument on December 2, 2010, the Court adopted its tentative ruling granting Yorkville's Motion for Judgment on the Pleadings and dismissing all the claims without prejudice. Dismissal Order at 2. Though the Court ultimately granted Cobalis the opportunity to amend its complaint for a third time, it noted that "in view of the considerable discovery already taken, there would have been more substance to examine by now if it was ever to be found." Dismissal Order at 14.

On January 7, 2011, Cobalis filed its Third Amended Complaint. Yorkville now files this Motion to Dismiss as to all counts alleged.

## II.    Factual Background

### A.    The Parties

Cobalis is essentially a pharmaceutical start-up company focused on the development and commercialization of one product, an over-the-counter anti-allergy medication, PreHistin. See Harper Decl., Ex. 1, at 9 (Cobalis Form SB-2/A, filed March 6, 2007) ("SB-2/A"); Third Am. Compl. ¶ 10. By 2006, Cobalis was anticipating the successful completion of the FDA Phase III trials for PreHistin and seeking investors. See id. at 14. However, Cobalis cautioned investors warning that "negative results from clinical trials could destroy [Cobalis'] ability to partner or market and sell [its] product candidate as an FDA-approved drug." Id. at 13.

**B.    In Late 2006, Yorkville Negotiates with and Agrees to Invest Funds in Cobalis**

In the Fall of 2006, Cobalis entered into extended negotiations with Yorkville under which Yorkville would provide funding through a private investment in public equity ("PIPE") transaction. Third Am. Compl. ¶ 13. More specifically, following negotiations in which Cobalis was represented by Wilson Sonsini Goodrich and Rosati, LLP, the parties entered into a series of written agreements under which Yorkville funded Cobalis. See, Harper Decl., Ex. 1, at 77 (SB-2/A).

There were effectively five written documents (the "Written Agreements"), entered on or about December 20, 2006, that formed the basic structure of the funding relationship. Third Am. Compl. ¶ 13. First, the Securities Purchase Agreement (the "Securities Purchase Agreement" or "SPA") was the central document of the Written Agreements as it defined the process under which Yorkville would fund Cobalis through a series of convertible debentures (collectively, the "Convertible Debentures") and warrants. Id. (Ex. 1: Securities Purchase Agreement; Ex. 2: Secured Convertible Debenture). Second, through the Convertible Debentures, Cobalis loaned a total of $3.85 million in three stages to Cobalis: (1) $2,500,000 within three days of execution of the SPA; (2) $675,000 when Cobalis filed its registration statement; and, (3) $675,000 within three days after the SEC declared the registration statement effective. Id. (Ex. 1: Securities Purchase Agreement, at 14). The Convertible Debentures also gave Yorkville the contractual right to convert debt into equity at a discount to the Cobalis stock price. Id. at ¶ 13. Third, the Security Agreement provided Yorkville with a security interest in all of Cobalis' assets and provided for the filing of a UCC-1. Id. (Ex. 4: Security Agreement). Fourth, the parties executed Irrevocable Transfer Agent Instructions on Dec. 20, 2006, whereby the transfer agent, Nevada Agency and Trust Company (the "Transfer Agent"), was instructed to comply with a series of agreed upon instructions with respect to the conversion process under the convertible debentures and warrants. Id. (Ex. 7: Irrevocable Transfer Agent Instructions). Finally, four Warrants

allowed Yorkville to purchase over 6.5 million shares of Cobalis' common stock at various

prices at Yorkville's discretion.  Harper Decl., Ex. 1, at 25 (SB-2/A).

Together, these Written Agreements provided for a fully-articulated, commercial

financing arrangement between the parties.

### C.  Trading Agreements and Restrictions Explicitly Defined in Written Agreements.

The Written Agreements contain (1) a "merger clause" establishing that the Written

Agreements supersede all alleged oral agreements between the parties, and (2) a "no oral

modification" provision establishing that the only way to change the terms of the Written

Agreements is through another writing.  See Third Am. Compl. (Ex. 1, at 20, §9(e)).  The merger

clause states that:

> [t]his Agreement supersedes all other prior oral or written
> agreements between the Buyer(s), the Company, their affiliates and
> persons acting on their behalf with respect to the matters discussed
> herein, and this Agreement and the instruments referenced herein
> contain the entire understanding of the parties with respect to the
> matters covered herein and therein and, except as specifically set
> forth herein or therein, neither the Company nor any Buyer makes
> any representation, or warranty, covenant or undertaking with
> respect to such matters.

Id.  Cobalis entered into the Written Agreements "solely on the independent evaluation by the

Company and its representatives" and not on account of any alleged verbal representations by

Yorkville.  Third Am. Compl. (Ex. 1, at 20, §3(i)).

Trading agreements and restrictions were explicitly defined and delineated in the Written

Agreements.  Most importantly, Yorkville agreed that it would not short Cobalis stock:

> [n]either the Buyer(s) nor any of its affiliates have an open short
> position in the Common Stock of the Company, and the Buyer(s)
> agrees that it shall not, and that it will cause its affiliates not to,
> engage in any short sales of or hedging transactions with respect to
> the Common Stock as long as any Convertible Debentures shall
> remain outstanding.

See Third Am. Compl. (Ex. 1, at 20, §4(l)).  This provision demonstrates Cobalis was able to

negotiate at arm's length for and in fact did obtain certain trading restrictions in the Written

Agreements. The merger and no modification provisions provided the parties with certainty and understanding of each respective party's obligations and rights under the agreements.

### D.    Spring of 2007:  Performance under the Written Agreements

As is typical under a PIPE convertible debenture, Cobalis was required by contract to file a registration statement with the U.S. Securities and Exchange Commission (the "S.E.C."). See Third Am. Compl. (Ex. 1, at 20, §4(c)).  On or about March 9, 2009, Cobalis filed its Amended Registration Statement making clear it was not profitable, it had received an auditor's going concern qualification, and that it relied on FDA approval as a fundamental prerequisite of its business strategy:  "The results of our [FDA] clinical trials may not support our product company claims, which may make it difficult for us to sell or partner our first planned product, our only source of revenues. **Our business will fail if we are unable to earn revenues**." Harper Decl., Ex. 1 at 9 (SB-2/A) (emphasis added).

Pursuant to the Written Agreements, from December 2006 through March 2007, Yorkville provided $3.85 million of funding to Cobalis. See generally, Third Am. Compl. (Ex. 1).  In April 2007, Yorkville then increased its investment with Cobalis by exercising a warrant for 1.33 million shares. See Third Am. Compl. ¶ 20.  In doing so, Yorkville increased its funding of Cobalis, less contractual fees, to almost $5 million.

After the registration statement went effective on March 16, 2007, Yorkville began to convert some of the debt into equity and sell the stock into the market. Id. at ¶¶ 20-21.  Pursuant to the Written Agreements, Yorkville would issue a notice of conversion for shares based on a formula that provided a discount to the trading price of Cobalis stock. Id. at ¶ 15.

### E.    Summer of 2007:  Cobalis' FDA Trials Fail and the Stock Price Plummets

Even after discovery and the Estimation Hearing described below, nowhere in any iteration of Cobalis' complaints, let alone the Third Amended Complaint, will one find the most important news event to occur in the history of the company: the failure of Cobalis' FDA Phase III trials.  On May 31, 2007, Cobalis issued a press release announcing that the FDA Phase III

trials, which had formed the center of its business strategy, had effectively failed.  See Harper

Decl., Ex. 2, at 216-17 (Press Release, Cobalis Corporation, Cobalis Announces Delay in

Reporting of Phase III Trial Results for PreHistin(TM) In Seasonal Allergic Rhinitis (May 31,

2007) ("May 31 Press Release")).  Unsurprisingly, after issuing the news, the stock price

plummeted drastically and immediately from $.99/share the day before the announcement to

only $.44/share the day after the announcement -- a drop of over 50 percent.  See Harper Decl.,

Ex. 3, at 218 (Cobalis Stock Price List).  By early July, the share price had dropped to $.30,

representing a 70 percent drop following the Phase III trial announcement.  See id.

Subsequently, on July 6, 2007, Cobalis announced another update on its FDA Phase III trials—

again bad news indicating the effective failure of Cobalis' FDA approval business strategy.  See

Harper Decl., Ex. 4, at 219-21 (Press Release, Cobalis Corporation, Cobalis Reports Phase III

Trial Results for PreHistin(TM) in Seasonal Allergic Rhinitis, Low Symptom Levels in Overall

Patient Population Lead to Inconclusive Outcome (July 6, 2007) ("July 6 Press Release").

### F.    Cobalis' Shorting Allegations Against Yorkville

Cobalis' Third Amended Complaint rises and, in this case, falls on its allegations that

Yorkville sold Cobalis stock short.  In Cobalis' ever-changing theory of shorting, the Third

Amended Complaint returns to even broader allegations of shorting that prior counsel had

abandoned in the First and Second Amended Complaints.  See e.g., Third Am. Compl. at ¶¶ 28,

41, 43-48.  Cobalis' attempt to attribute a $0.90 reduction in share price to Yorkville's trading

activities is belied by the fact that it fails to mention, despite this Court specifically mentioning

its notable absence from their prior briefs, the failed Phase III trials.

### G.    Cobalis Defaults and Yorkville Places Cobalis into Bankruptcy

On July 23 and 25, 2007, Yorkville sent two letters (respectively the "July 23, 2007

Default Letter" and the "July 25, 2007 Default Letter") to Cobalis informing it that it was in

default under the terms of the Written Agreements, the final letter signaling that Yorkville was

accelerating the full principal amount of the Debenture, together with interest and other amounts

owing.  See Original Compl. at ¶ 65; see generally Mem. in Support of YA Global Investment
LP's Emergency Mot., filed March 1, 2010, at 14.

On August 1, 2007, Yorkville filed an involuntary bankruptcy petition against Cobalis.
Third Am. Compl. ¶ 48.

## LEGAL ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), incorporated by
Federal Rule of Bankruptcy Procedure 7012, dismissal of Cobalis' Third Amended Complaint is
appropriate where, as here, Cobalis has "failed to state a claim upon which relief can be
granted."  Dismissal is proper where the plaintiff's "complaint fails to 'state a claim to relief that
is plausible on its face.'" Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 989 (9th Cir.
2009) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)).  In order to survive a
motion to dismiss, plaintiff must allege sufficient facts to show that he has a plausible
entitlement to relief.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Indeed, "[c]onclusory
allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for
failure to state a claim." In re VeriFone Sec. Litig., 11 F.3d 865, 868 (9th Cir. 1993) (citing
United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n. 2 (9th Cir. 1986).  In deciding a
motion to dismiss, the Court "may consider any written instrument attached to the complaint,
statements or documents incorporated into the complaint by reference, legally required public
disclosure documents filed with the S.E.C., and documents possessed by or known by the
plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund,
Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

## I.    Cobalis Fails to Cure Previously Dismissed Claims (the "Old" Causes of Action)

Cobalis' Third Amended Complaint reasserts five causes of action previous dismissed by
this Court in the Dismissal Order:  (1) securities fraud under § 10(b) of the Exchange Act (Count
III); (2) interference with prospective economic advantage (Count IX); (3) breach of contract:
Securities Purchase Agreement (Count I); (4) breach of contract:  Debenture Agreement (Count
II); and, (5) declaratory relief and preliminary injunction (Count VII).  Courts have repeatedly

stressed that litigants submitting an amended complaint that reasserts previously dismissed claims must put forward something substantial and new that changes the prior disposition. Harper Decl., Ex. 5 (<u>Adams v. New York State Education Dept.</u>, No. 8 Civ. 5996, 2010 WL 4970011, at *9 (S.D.N.Y. 2010) (sanctions deemed appropriate in case where the party had "[p]resenting a pleading, written motion or other paper that was adjudicated deficient, without substantially addressing legal deficiencies previously adjudicated, violat[ing] the duty to conduct a reasonable inquiry into law.")).   In reasserting these five causes of action in the Third Amended Complaint, Cobalis tries to throw together the same shorting related allegations previously dismissed by this Court or abandoned by earlier Cobalis counsel.  The reasserted claims remain baseless and, as such, should be dismissed.

> **A.**    **Cobalis Fails to Plead a Cause of Action for Section 10(b) and Rule 10b-5 Federal Securities Fraud (Count III)**

In its Dismissal Order, the Court dismissed Cobalis' securities fraud claim on at least three alternative grounds: (a) manipulative acts or actionable misrepresentations/omissions; (b) scienter/intent; and (c) causation/damages.  Dismissal Order at 10-11.   In re-asserting a claim for Section 10(b) securities fraud, Cobalis must still plead (1) manipulative acts or actionable misrepresentations or omissions; (2) damage; (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; and (6) furthered by the defendant's use of the mails or any facility of a national securities exchange.  <u>See</u> <u>ATSI Commc'ns, Inc.</u>, 493 F.3d at 98, 101.  Cobalis must specifically plead the securities fraud elements so as to meet the pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). <u>Zucco Partners</u>, 552 F.3d at 990.  Cobalis fails to meet these heightened pleading standards yet again as it reasserts previously abandoned or previously rejected allegations.

> **1.**    <u>**Market Manipulation/Misstatement.**</u>

As it did in its Second Amended Complaint, and as is typical in PIPEs litigation, Cobalis alleges Yorkville made certain misrepresentations to Cobalis to induce it to enter into the Written

Agreements and engaged in a shorting scheme to manipulate the company's stock price.

Cobalis' Section 10(b) claim once again relies on allegations of short sales or other improper

trading.  Third Am. Compl. at ¶ 42, 45 ("the Defendants directed a series of short sales of

Plaintiff's stock," "the Defendants sold Plaintiff's stock when it owned none of its shares,"

"Defendants and their brokers failed to buy or borrow stock to cover these sales on the settlement

date").  These allegations do not constitute securities fraud and fly in the face of this Court's

previous holding that "[t]o be actionable as a manipulative act, short selling must be willfully

combined with something more to create a false impression of how market participants value a

security" and that "short selling alone is not manipulative."  Dismissal Order at 10 (citing <u>ATSI</u>

<u>Commc'ns, Inc.</u>, 493 F.3d at 101).  Given this requirement, courts have held that "purchasing a

floorless convertible security is not, by itself or when coupled with shortselling, inherently

manipulative."  <u>ATSI Commc'ns, Inc.</u>, 493 F.3d at 101.

       That Cobalis has repackaged its previous securities fraud allegations in the form of

previously rejected or abandoned factual allegations does not change this analysis or its result.

<u>First</u>, Cobalis returns to its previously abandoned position that Yorkville shorted on more than a

single day.  Third Am. Compl. ¶ 28 (citing short sales on April 12, 13, 17, 2009 and July 7,

2007"), <u>see also id.</u> at ¶ 42; Debtor's Trial Br. in Opp. to Mot. of YA Global Investments, L.P.

for Estimation of Its Secured Claim for Voting Purposes ("Cobalis Estimation Br."), at 29

("YAGI has sold short over five million shares of Cobalis").  When Cobalis realized no actual

shorting occurred, it changed the definition of what constitutes a short and, as a result, was able

to expand its shorting allegations based on this new definition.  Despite adding additional dates

of purported shorting, Cobalis still fails to allege with specificity any fraudulent acts and, by its

own admission, can only allege short sales took place when it creates a definition for short sales

wholly unsupported by federal securities law.[2]  Dismissal Order at 6.  Indeed, Cobalis' definition

---

[2] <u>See also</u> Third Am. Compl. at ¶ 24 (defining a sale as a short "unless [Yorkville] owned the certificates, bearing
serial numbers, and had physical possession of same at the time of sale" and defining shares as not being "owned"
"until they are actually converted, issued, delivered and received in Defendants' accounts, and made free-trading
through registration or under Rule 144.").  Under Cobalis' theory, a party who buys stock must first receive physical
possession of the certificate (which takes approximately three days) before it can sell the stock.  Cobalis contends

of short sales -- which is not supported by law or practice -- would bring the stock market to a

halt if adopted.

Second, Cobalis tries to expand on an old abandoned theory that, upon information and

belief, Yorkville somehow colluded with broker dealers to short Cobalis stock.  Id. at ¶¶ 43-45,

47.  As Cobalis' unsupported allegations expand, they become more speculative and desperate:

Courts have consistently rejected "upon information and belief" claims without specific

allegations upon which the belief is based.  Zucco Partners, 552 F.3d at 990-91.  None of this has

been attempted, let alone met, by Cobalis.  Collusion claims with a broker-dealer like those

alleged here are simply not enough and have been repeatedly rejected.  ATSI Commc'ns, Inc.,

493 F.3d at 104-05.

## 2.    Strong Inference of Scienter.

As the Dismissal Order plainly recognized, it is not enough to plead intent to commit

federal securities fraud based on simplistic, conclusory allegations.  Dismissal Order at 11.

Under the PSLRA, "the complaint shall, with respect to each act or omission alleged to violate

this chapter, state with particularity facts giving rise to a strong inference that the defendant acted

with the required state of mind."  15 U.S.C. § 78u-4(b)(2); see Dismissal Order at 11.  Moreover,

"in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court

must take into account plausible opposing inferences."  Tellabs, Inc. v. Makor Issues & Rights,

Ltd., 127 S.Ct. 2499, 2509 (2007).  As the Court noted, "the requisite 'strong inference' is

defined as what 'a reasonable person would deem the inference of scienter cogent and at least as

compelling as any opposing inference one could draw from the facts alleged.'"  Dismissal Order

at 11 (citing Tellabs, 127 S.Ct. at 2504).

Cobalis continues to allege, without any support, a premeditated shorting scheme to put

Cobalis out of business, whether by shorting, heavy trading, insider trading or otherwise, that is

---

that if the party were to sell the stock prior to Cobalis' imaginary three-day holding period, that the sale would be a short sale.  This interpretation conflicts with Regulation SHO, as discussed above, and departs from the general practice and understanding of equity markets by regulators, investors (notably day traders) and all other market participants.  Dismissal Order at 6.

unsupported by specific scienter allegations.  This Court previously rejected these claims as

"conclusory" and "not sufficient for a strong inference of scienter."  Dismissal Order at 9.

Unsurprisingly, federal courts have made clear in the context of an alleged PIPE market

manipulation scheme:  "[a] strong inference of scienter is not raised by alleging that a legitimate

investment vehicle, such as the convertible preferred stock at issue [in that case], creates an

opportunity for profit through manipulation."  See ATSI Commc'ns, Inc., 493 F.3d at 106.

Cobalis generally alleges that "based on the foregoing" in the Third Amended Complaint,

Yorkville somehow acted "knowingly, willfully or recklessly."  Third Am. Compl. at ¶ 51.  Such

a generalized allegation on now the fourth attempt at a complaint is precisely the abuse the

pleading requirement addresses.[3]  Because Cobalis has failed to plead a strong inference of

scienter, the Court should dismiss the securities fraud claim on this second independent ground.

### 3.    Causation/Damages.

    The standard to  plead causation and damages is clear and Cobalis must allege "the

proximate causal link between the alleged misconduct and the plaintiff's economic harm."  ATSI

Commc'ns, 493 F.3d at 106; Dismissal Order at 11.  "To that end, the plaintiff's complaint must

plead that the loss was foreseeable and caused by the materialization of the risk concealed by the

---

[3] In attempting to revive its previously abandoned insider trading allegations, Cobalis runs flatly into and cannot survive the PSLRA and Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") pleading requirements that routinely reject speculative trading claims.  Case law has repeatedly made clear that in order to pursue securities fraud for insider trading, plaintiffs must put forward specific allegations that demonstrate not only how the information was material and non-public, but also that the defendant acted with intent in trading on that information.  In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 987 (9th Cir. 1987) ("insider trading is suspicious only when dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.")  Here, Cobalis comes nowhere close to alleging securities fraud as it fails to even acknowledge information in the market with respect to its prospects given the disastrous Phase III trial results announced in both the May 31 and July 6 press releases.  See Harper Decl. Ex. 2 (May 31 Press Release) and Ex. 4 (July 6 Press Release).  Indeed, Cobalis fails to acknowledge that the May 31 and July 6 press releases disclosing the "inconclusive" Phase III FDA trials cratered the value of the stock and put into the marketplace the serious financial condition of the company as reflected by its stock price.  Indeed, the good faith basis for the ability to plead the theory is called into question by testimony from both Cobalis and Yorkville during the Estimation Hearing that the debate as to whether to put into Cobalis into bankruptcy was taking place up until almost the moment of filing.  Memorandum in Support of YA Global Investment LP's Emergency Motion to Estimate Its Secured Claim for Voting Purposes in Connection with Estimation Hearing ("Yorkville Estimation Br.") at 19 ("Around that time, Yorkville's General Counsel David Gonzalez had a telephone conversation with then-Cobalis CEO Yakatan regarding Gryphon's attempt to seize Cobalis assets pursuant to a judgment in its favor . . . . Given concerns about the default, David Gonzalez decide to place Cobalis on Yorkville's restricted trading list to bar trading in that stock.").

fraudulent statement." <u>ATSI Commc'ns, Inc.</u>, 493 F.3d at 107.  Unsurprisingly, this stringent

causation requirement has been enforced in the context of PIPE transactions.  <u>Id.</u> at 106-07.

Despite repeated warnings from this Court from the bench and in the Dismissal Order,

Cobalis still fails to address causation or the negative impact of significant events, such as its

failure in the Phase III FDA trials.[4]  This is particularly shocking in light of the Court's language

in the Dismissal Order.  Dismissal Order at 9 ("Plaintiff conveniently fails to mention its

contemporaneous public announcement that its Phase III FDA trials had not succeeded.  Clearly

this announcement would have caused a drop in stock price quite aside from anything

Defendants may have done.").  Even now, Cobalis fails to address these issues.

**B.      Interference with Prospective Economic Advantage (Count IX)**

Cobalis' claim for interference with a prospective economic advantage fails for the exact

same reasons it failed in the Dismissal Order: (i) the doctrine of judicial estoppel; (2) federal

preemption; and (iii) failure to plead intent and improper acts with specificity as required under

Federal Rule of Civil Procedure 9(b).  <u>Marks v. Struble</u>, 347 F. Supp. 2d 136, 147 (D.N.J. 2004).

<u>First</u>, as the Court noted in its Dismissal Order, the parties stipulated that the propriety of

an involuntary petition was not to be challenged in this case and, as a result, "the court is very

dubious under the doctrine of judicial estoppel that the debtor, having stipulated to an order for

relief herein, could now take a contrary position in this adversary proceeding."  Dismissal Order

at 13.  As this Court noted, "[f]oreclosures and lawsuits to collect are always bad for business,

but that does not mean the debtor is free to ignore its obligations or that a creditor must forebear

from its attempts to collect."  <u>Id.</u>

---

[4] Cobalis still alleges, incredibly, that the decrease in its stock from $1.01 on May 22, 2007 to $0.11 on July 10, 2007, was the result of Yorkville's "heavily concentrated selling activity in the market," which caused "a constant downward pressure on the stock price which caused the share price to decrease until less than 10¢ a share in late July, 2007. . . ." Third Am. Compl. ¶ 21.  This allegation yet again fails to address the May 31, 2007 announcement of the failed Phase III trial that drove Cobalis' stock price from $0.99 the day before the announcement to $0.44 the day after the announcement.  <u>See</u> Harper Decl., Ex. 3, at 218 (Cobalis Stock Price List).  The Court correctly noted that Cobalis' allegation that the decrease "was solely the result of trading by [Yorkville] and short selling.  This is just not plausible."  Dismissal Order at 9 (internal citations omitted).

Second, because Cobalis' claims are predicated on a wrongly-filed involuntary petition, the claims are completely preempted by 11 U.S.C. § 303(i).  Miles v. Okun (In re Miles), 430 F.3d 1083, 1089 (9th Cir. 2005) (holding that section 303(i) of the Bankruptcy Code completely preempts any cause of action that has an involuntary bankruptcy petition as its factual basis).  In Miles, the Ninth Circuit found that "Congress intended 11 U.S.C. 303(i) to provide the **exclusive** basis for awarding damages predicated upon the filing of an involuntary petition."  Id. at 1089 (emphasis added).  By authorizing certain sanctions to redress bad-faith involuntary bankruptcy petitions, Congress "rejected other penalties, including the kind of substantial damage awards that might be available in state court tort actions."  Id. at 1090 (citing Gonzales v. Parks, 830 F.2d 1033, 1035-36 (9th Cir. 1987)).

Section 303(i) completely preempts competing causes of action by providing a comprehensive remedial scheme that "specifically addresses the full range of remedies, from costs and attorneys' fees for dismissed involuntary petitions to compensatory and punitive damages for involuntary petitions filed in bad faith."  Id. at 1090.  Allowing competing remedies to supplement this scheme would interfere both with the filing of involuntary bankruptcy petitions as well as other necessary actions that must be taken within the confines of the Bankruptcy Code.  Id.  Accordingly, state and federal courts alike have uniformly held that alleged debtors may not supplement section 303(i)'s remedies with other causes of action.  See, e.g., id. at 1090 (dismissing state law causes of action to recover damages for defamation, false light, abuse of process, emotional distress, negligence and negligent misrepresentation based on involuntary petition); Glannon v. Garrett & Assocs., Inc., 261 B.R. 259, 265 (D. Kan. 2001) (dismissing claims for malicious prosecution and abuse of process claims); Harper Decl. Ex. 6 (Raymark Indus., Inc. v. Baron, No. CIV. 96-7625, 1997 WL 359333, at *11 (E.D. Pa. June 23, 1997) (dismissing state law counts for tortious interference with contractual business relations, civil conspiracy, and attorney's fees)); Koffman v. Osteoimplant Tech., Inc., 182 B.R. 115, 126-27 (D. Md. 1995) (explaining that "allowing state law tort suits to go forward would prejudice the operation of the Bankruptcy Code in an impermissible manner"); Mason v. Smith, 672 A.2d

705, 708 (N.H. 1996) (affirming summary judgment against claims for abuse of process, intentional and negligent misrepresentation, interference with business or contractual relations, breach of fiduciary duty, and malicious prosecution); <u>Gene R. Smith Corp. v. Terry's Tractor, Inc.</u>, 209 Cal.App.3d 951, 954 (Cal.Ct.App. 1989) (dismissing malicious prosecution and abuse of process claims).

Section 303(i) preempts Cobalis' ninth cause of action—intentional interference with prospective economic advantage—because each instance of the alleged tort relies entirely on the involuntary filing. Indeed, Cobalis repeatedly alleges that numerous third parties declined to do business with Cobalis <u>as a result of the involuntary filing</u>. <u>See</u>, <u>e.g.</u>, Third Am. Compl. at ¶ 81 ("such contract was not consummated and the relationship was disrupted by Defendants, through the wrongful filing of an involuntary petition against Plaintiff for bankruptcy."); <u>see</u> <u>also</u> <u>id.</u> at ¶¶ 79, 83. Because the claim is based on the involuntary filing, Section 303(i) completely preempts Cobalis' ninth cause of action.

Even if the Court were to construe Cobalis' claims stemming from the involuntary filing as claims pursuant to Section 303(i), each would still fail at the motion to dismiss stage under the plain terms of Section 303(i). As a prerequisite to any damages award, Section 303(i) requires that (i) the involuntary petition was dismissed <u>and</u> (ii) that the debtor did not waive the right to judgment under Section 303(i). <u>See</u> 11 U.S.C. § 303(i) ("If the court dismisses a petition under this section . . . and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment . . . .").

Neither prerequisite is satisfied in this bankruptcy case. The involuntary petition was never dismissed. Indeed, Cobalis consented to an order for relief and voluntarily converted the case to Chapter 11.[5] In addition, Cobalis affirmatively waived any right to damages under Section 303(i) by stipulation that, after notice to creditors, was subsequently approved by this Court.[6] No party objected to Cobalis' waiver of claims under Section 303(i). Because neither

---

[5] <u>See</u> Dkts. 17, 24.

[6] <u>See</u> Dkts. 6, 8.

of the conditions precedent to a damages award is present, Cobalis has failed to state a claim even if this cause of action was construed as a Section 303(i) claim.

Third, under New Jersey law, in order to state a claim for interference with prospective economic advantage "the complaint must allege facts claiming that the interference was done intentionally and with malice[,]" meaning "without justification or excuse." See Dismissal Order at 13 (citing Weisgarber v. N.J. Dep't of Cmty. Affairs, Div. of Codes and Standards, -- A.2d --, 2009 WL 3170438, at *4 (N.J. Super. A.D. 2009)).  The Third Amended Complaint alleges the same prospective contracts if, with anything, less detail on relationships than before.  Compare Second Am. Compl. at ¶¶ 109-113 with Third Am. Compl. at ¶¶ 79-86.  Such allegations fall woefully short of the specificity requirement for pleading intent for a claim of tortious interference with a prospective contractual advantage,[7] and as a result, this claim should be dismissed.  See also 11 U.S.C. § 303 (claim for damages resulting from the bankruptcy filing was waived by Cobalis in its Sept. 12, 2007 stipulation with Yorkville).

### C.    Breach of Contract: Securities Purchase Agreement (Count I)

Cobalis' first breach of contract claim alleges a scheme by Yorkville to short Cobalis stock based on purported oral conversations between Chas Radovich and Yorkville employees before the Written Agreements were finally negotiated and entered.  Third Am. Compl. ¶ 25. The thrust of these same allegations were, of course, contained in the Second Amended Complaint.  See Second Am. Compl. ¶¶ 80-82 (alleging Radovich-Yorkville employee oral conversations and supposed "clarifications" regarding short selling and caps on daily trading volume).  This Court dismissed the breach of contract allegations (1) rejecting Cobalis' definition of short sales as inconsistent with the terms of the SPA and federal regulations interpreting what constitutes a short sale,[8] Dismissal Order at 6, and (2) holding that oral

---

[7] Moreover, as discussed above, Section 303(i) of the Bankruptcy Code preempts Cobalis from alleging intentional interference with prospective economic advantage as it relies entirely on the involuntary bankruptcy filing.

[8] As discussed in previous briefs and the Court's Dismissal Order, Cobalis' allegations of short sales fail as a matter of law because Cobalis must ignore the federal securities law definition of short selling that flatly contradicts Cobalis' definition of shorting as any sale made while not in physical possession of the share certificates.  Under federal securities law, Regulation SHO defines short selling through a two-step analysis of: (1) ownership of the

discussions alleged by Cobalis were barred by the merger clause contained in the Written

Agreements and New Jersey's parol evidence rule: "[T]he court simply cannot fathom how such

central terms as now appear in the SAC could have been left to oral agreement."  Dismissal

Order at 8 (citing <u>Delareto v. Totaro</u>, -- A.3d --, 2010 WL 3834365 *3 (N.J. Super. App. Div.

2010)).

Cobalis' Third Amended Complaint offers more allegations regarding the "common law"

understanding of a short sale and supposed oral understandings and "clarifications."  Third Am.

Compl. ¶ 25.  Re-arguing the previously rejected "common law" short sale definition (and its

characterization of the regulatory definition of short sale as "arcane") does not magically alter

the legal analysis and does not change the result from the Court's Dismissal Order.  Indeed,

moving a failed legal argument into an amended complaint can also backfire; Cobalis has now

placed in the center of its latest shorting allegations its understanding of what it means to "own"

shares <u>based on federal securities regulations</u> (and specifically Rule 144).   Third Am. Compl. ¶

24.  The Court's legal analysis was sound in the Dismissal Order; Cobalis' flip-flopping on its

legal arguments contained in its Third Amended Complaint only reinforces this Court's

conclusion.[9]

---

security; and (2) the location requirement.  Under Rule 200(b), the ownership requirement is satisfied by Yorkville's convertible debentures and its subsequent tendering through the conversion process.  In order to satisfy Regulation SHO's locate requirement, a broker must mark the sale long if the "security to be delivered is in the physical possession or control of the broker or dealer."  17 C.F.R. § 242.200(g)(1)(i).  Cobalis fatally ignores the second alternative, however, whereby an order shall be marked long if it "is reasonably expected that the security will be in the physical possession or control of the broker or dealer no later than the settlement of the transaction."  17 C.F.R. § 242.200(g)(1)(ii).  Cobalis' position that Yorkville shorted Cobalis stock because it purportedly did not have Cobalis stock certificates in its possession is flatly contradicted by the plain language of Regulation SHO.

Faced with the definitive federal securities law definition of shorting directly contradicting its position, Cobalis argues that the parties somehow intended, despite all evidence to the contrary, for the term "short sales" to take on a very specific definition that is both flatly contradicted by federal securities law and nowhere to be found in the Written Agreements.  For over fifty years, New Jersey law has recognized that "the law is a silent factor in every contract" and "[p]arties in New Jersey are likewise presumed to have contracted with reference to the existing law." <u>Silverstein v. Keane</u>, 115 A.2d 1, 13 (N.J. 1955); Harper Decl., Ex. 7 (<u>Kelly v. Arato</u>,  -- A.2d. --, 2009 WL 3849664, at *2 (N.J. 2009)).  Federal securities law clear defines the meaning of the term "short sale," a term that is inherently technical and inextricably linked to its legal definition.  Cobalis was represented by sophisticated counsel (Wilson Sonsini Goodrich & Rosati) and, as demonstrated by the no shorting provision itself, was able to negotiate for favorable terms when it wanted to.

[9] In the alternative, with regard to damages, even if Yorkville had short sold Cobalis stock -- which, as explained above, it did not -- Cobalis cannot establish that it suffered any damages from this purported breach.  Though

### D.     Breach of Contract: Debenture Agreement (Count II)

Cobalis' second claim for breach of contract is based on allegations that Yorkville

breached the Debenture Agreement by acquiring more than 4.99% of Cobalis stock at one time

as a result of unspecified July 2007 trades.  Third Am. Compl. ¶ 32-34.  The Court dismissed the

same theory in the Dismissal Order under Iqbal and Twombly, holding that "documents

regarding the transfer and same of shares seem to demonstrate that the conversions Plaintiff is

referencing took place 07/12/2007 and 07/13/2007, with Defendants selling the 07/12/2007

conversion shares on the same day and before the 07/13/2007 conversion took place."  Dismissal

Order at 7.  The Third Amended Complaint offers the same basic allegations as the Second

Amended Complaint, and continues to fail to allege that somehow Yorkville did not sell before

the July 13, 2007 conversion.  See Third Am. Compl. ¶ 34.  The Court should dismiss the 4.99%

ownership theory for the same reason as in the Dismissal Order.

### E.     Declaratory Relief and Injunctive Relief (Count VII)

As was the case in its Second Amended Complaint, Cobalis asserts a claim for

declaratory relief and injunctive relief (Count VII); for the reasons stated above and below, this

claim must fail as all of Cobalis' nonremedial claims fail as a matter of law.  Dismissal Order at

14 ("[T]he court agrees with [Yorkville] that these are remedies, not causes of action, and so

these must stand or fall with the related theories for relief that might support such remedies.")

---

Cobalis points to "the volatility of Cobalis' share price, particularly after the price was depressed between July 6 and 11, 2007 (in large part in association with large block sales by Cornell Capital)," it completely ignores, despite repeat admonishments from the Court, the impact of the failed Phase III FDA trials.  Third Am. Compl. at ¶ 27.  In particular, despite citing July 6, 2007 as the date on which the stock price plummeted -- purportedly due to Yorkville's trading activity -- it ignores entirely the fact that it released a public announcement that very same day stating that the Phase III FDA trials were "inconclusive."  See Harper Decl., Ex. 4, at 219-21 (July 6 Press Release). As the Court put it in its Dismissal Order, "[c]learly this announcement would have caused a drop in stock price quite aside from anything Defendants may have done."  Dismissal Order at 11.

## II.    Cobalis' New Claims Fail to Survive Scrutiny (the "New" Causes of Action)

Failing to effectively amend the claims from its Second Amended Complaint to overcome any of the Court's bases for dismissing it in its entirety, Cobalis repackages its original claims as "new," baseless claims for federal securities fraud under Section 17(a)(1) of the Securities Act of 1933 (Count IV), violations of RICO (Count V), unjust enrichment and restitution (Count VI), and unfair business practices (Count VIII).  For the reasons stated below, all of these claims must fail.

### A.    Cobalis Fails to Plead a Cause of Action for Section 17(a)(1) Federal Securities Fraud (Count IV)

Cobalis alleges that Yorkville violated Section 17(a)(1) of the Securities Act of 1933 despite the fact that for more than twenty years the Ninth Circuit has prohibited Section 17(a) claims from being pursued in private actions.  Third Am. Compl. at ¶¶ 54-57; In re Washington Pub. Power Supply Sys. Sec. Litig. v. Houghton, 823 F.2d 1349, 1358 (9th Cir. 1987) ("no private right of action lies under section 17(a). . . .").  As such, Cobalis' claim for federal securities fraud under Section 17(a)(1) must fail as a matter of law and indicates a failure to investigate and have a good faith basis for filing the Third Amended Complaint.

### B.    Cobalis Fails to Plead a Cause of Action for RICO Violations (Count V)

Similarly, Cobalis asserts a claim for RICO violations based on a theory that courts have uniformly rejected as baseless.  Even a cursory review of the Third Amended Complaint establishes Cobalis' RICO claim is impermissibly based on predicate acts rooted in securities fraud allegations.  Third Am. Compl. ¶ 59(a)-(e).

Section 1962(a) "prohibits a person from a pattern of racketeering activity from using or investing such income in an enterprise engaged in interstate commerce."  Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1147 (9th Cir. 2008).  To bring a claim under § 1962(a) requires allegations of "'racketeering activity,' which is the commission of a predicate act found in 18 U.S.C. § 1961(1)."  See Wilcox v. First Interstate Bank of Oregon, N.A., 815 F.2d 522, 529 (9th Cir. 1987).  In 1995, however, Congress amended the federal Racketeer Influenced and

Corrupt Organizations Act ("RICO Act"), narrowing the type of conduct that qualifies as a RICO

predicate act and specifically eliminating a predicate that relies on securities fraud allegations.

Howard v. Am. Online Inc., 208 F.3d 741, 749-50 (9th Cir. 2000); see also, Swartz v. KPMG,

476 F.3d 756, 761 (9th Cir. 2007) (holding that the PSLRA bars a RICO claim predicated on

securities fraud allegations); Harper Decl., Ex. 8 (Burnett v. Rowzee, -- F.Supp.2d --, 2007 WL

2735682, at 7-8 (C.D. Cal. 2007) (same)).  Indeed, the congressional amendment was broadly

intended not only "to eliminate securities fraud as a predicate offense in a civil RICO action, but

also to prevent a plaintiff from pleading other specified offenses . . . as predicate acts under civil

RICO if such offenses are based on conduct that would have been actionable as a securities

fraud."  Harper Decl., Ex. 9 (Eagletech Comm'ns v. Citigroup, Inc., -- F.Supp.2d --, 2008 WL

3166533, at *9 (S.D. Fla. 2008) (internal citations omitted)).

Even a cursory review of the Third Amended Complaint establishes that Cobalis' RICO

allegations are based on securities fraud predicate acts as Cobalis' claim is predicated on alleged

oral representations concerning short selling, trading caps, investment purpose, and insider

trading allegations.  Third Am. Compl. ¶ 59.  For example, Cobalis alleges "similar PIPE

transactions resulting in death spiral stock prices" and "violation[s] of anti shorting provisions

and manipulation of the market for the borrower's stock based on inside, material information

learned during 'due diligence' in this PIPE transaction."  Id. at ¶ 59(c).  Moreover, Cobalis

alleges Yorkville made false representations that it "would not short Plaintiff's stock, would not

own more than 4.99% of Plaintiff's stock, and would acquire stock with an investment purpose

and not with the purpose of immediately distributing and reselling the stock to the public."  Id. at

¶ 59(a).  Cobalis' claim not only attempts to resuscitate already dismissed claims of securities

fraud and contract violations, but also rests squarely and entirely on a theory of RICO violations

repeatedly rejected by the Ninth Circuit in Swartz and courts around the country.  See e.g., Affco

Inv. 2001, LLC v. Proskauer Rose, L.L.P., 625 F.3d 185, 189 (5th Cir. 2010).  Finally, Cobalis

fails to allege RICO violations with specificity as required under Rule 9(b).  As such, Cobalis'

claim for RICO violations should be dismissed, and again calls into question the good faith basis

for adding a $100 million claim that brazenly contradicts a congressional statutory amendment.

> **C.      Cobalis Fails to Plead a Cause of Action for Unjust Enrichment and
>          Restitution (Count VI)**

Cobalis' claim for unjust enrichment and restitution is not only duplicative of elements of

claims already rejected by this Court, but should be dismissed on the grounds of judicial estoppel

and federal preemption.

Section 303(i) completely preempts Cobalis' sixth cause of action—unjust enrichment—

because Cobalis' claim for unjust enrichment is based entirely on the alleged improper

involuntary bankruptcy filing. In re Miles, 430 F.3d at 1089; supra Section IV B. Cobalis' claim

is based entirely on "notices of putative acts of default under the terms of the Debentures[,]" the

notion that "[t]he notices issued and [Yorkville's] act of filing an Involuntary Chapter 7 were

acts of bad faith[,]" and the allegation that Yorkville's "Proofs of Claims have all been grossly

inflated by attorneys fees that are not attributable to [Cobalis], which was never in **material**

default." Third Am. Compl. at ¶¶ 64-66 (emphasis in original). Given the fact that Cobalis'

claim for unjust enrichment is entirely based on the allegedly improper involuntary bankruptcy

filing, it should be dismissed along with the other claims.[10]

In addition, judicial estoppel prevents Cobalis from asserting this cause of action. As

discussed during the December 2, 2010 oral argument, a stipulation between the parties clearly

states that the propriety of the involuntary petition was not to be challenged in this case. Order

Approving Final Stipulation to Extend Time to Respond to Involuntary Petition, dated

September 21, 2007 (waiving any damages arising under Section 303(i) and "any right to contest

the validity of the Involuntary Petition on the grounds the Alleged Debtor has more than 12

---

[10] Even if the Court were to construe the Cobalis' claims stemming from the involuntary filing as claims pursuant to Section 303(i), each would still fail at the motion to dismiss stage under the plain terms of Section 303(i). As a prerequisite to any damages award, Section 303(i) requires (i) the involuntary petition be dismissed and (ii) that the debtor not waive the right to judgment under Section 303(i). Neither prerequisite is satisfied here. First, the involuntary petition was never dismissed; indeed, Cobalis consented to an order for relief and voluntarily converted the case to Chapter 11. Second, Cobalis affirmatively waived any right to damages under Section 303(i) by stipulation that, after notice to creditors, was subsequently approved by this Court.

creditors."); see also, Dismissal Order at 11 ("[T]he court is very dubious under the doctrine of judicial estoppel that the debtor, having stipulated to an order for relief herein, could now take a contrary position in this adversary proceeding."). As such, this claim should fail as it directly contradicts the stipulation between the parties and violates the doctrine of judicial estoppel.

> **D.    Cobalis Fails to Plead a Cause of Action for Unfair Business Practices (Count VIII)**

In the ultimate repackaging of factual allegations previously rejected, Cobalis now alleges that the wrongful placement into bankruptcy, the securities fraud, Cobalis' past commercial relationships over approximately a decade, and breaches of contract (through shorting and violations of the 4.99% ownership cap) all somehow constitute unfair business practices. Third Am. Compl. ¶¶ 73-76.

Although not a model of clarity, Cobalis appears to allege common law unfair business practices pursuant to California Business & Professions Code § 17200. Courts have consistently held that in proscribing unlawful business practices, § 17200 borrows violations of other law; where a plaintiff cannot state a claim under the "borrowed" law, it cannot state a violation of § 17200 either. Harper Decl., at Ex. 10 (Hamilton v. Bank of Blue Valley, -- F.Supp.2d --, 2010 WL 4222724 (E.D. Calif., Oct. 20, 2010)). Accordingly, as Count VIII alleges the same 4.99% ownership (Count II), wrongful placement into bankruptcy (Count VI), a business plan purportedly designed to cause the failure of companies Yorkville places money with (Count III), and short selling allegations (Count III) are all asserted elsewhere and all fail to state a cause of action, they also fail to state a § 17200 claim. As such, Cobalis' claim for unfair business practices should be dismissed in its entirety.

Moreover, there are additional alternative grounds for dismissing the unfair business practices claim. First, for the same reasons as discussed above, Cobalis' claim for unfair business practices is also preempted by Section 303(i) of the Bankruptcy Code to the extent that the allegedly unfair business practices all culminate in the involuntary bankruptcy filing and the damages alleged flow from the involuntary petition. Cobalis bases its eighth cause of action on

its allegation that Yorkville " further engaged in unfair business practices . . . by commencing an involuntary bankruptcy proceeding against Plaintiff[.]"  Third Am. Compl. at ¶ 74.  Cobalis goes on to allege that Plaintiff suffered damages due to the involuntary filing.  Id. at ¶ 75.  For the reasons stated above, Cobalis' claim for unfair business practices, as predicated on the involuntary bankruptcy filing, should be dismissed as having been preempted by Section 303(i).  Second, if somehow one were to conclude that the claims are not repetitive, Cobalis' claim is also deficient for failing to state a claim under § 17200 with sufficient particularity, something required of al § 17200 claims sounding in fraud.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

## III.    Cobalis' Third Amended Complaint Should Be Dismissed with Prejudice

In granting Cobalis a third opportunity to amend its complaint, the Court cautioned that this opportunity would be its last.  Despite benefiting from multiple briefings and the Estimation Hearing, which provided the opportunity for depositions, expert testimony, factual witnesses and a ruling from this Court, Cobalis has continually failed to allege a viable cause of action against Yorkville.  Cobalis should not be granted an opportunity to file a fifth complaint and, in doing so, further waste judicial resources with its fishing expedition.

In determining whether to dismiss claims with prejudice, the Ninth Circuit frequently refers to five factors: (1) repeated failure of prior amendments to cure deficiencies; (2) futility of the amendment; (3) bad faith; (4) undue delay; and (5) prejudice to the opposing party.  Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990); see also, Harper Decl., at Ex. 11 (Coleman v. Am. Home Mortgage Servicing, No. CV-09-02692-PHX-ROS, 2010 WL 3283564, at *2 (D. Ariz. 2010)).  A complaint may be dismissed with prejudice regardless of whether all five factors are present.  Allen, 911 F.2d at 373.  When reviewing a decision to dismiss a claim with prejudice, courts look for an abuse of discretion.  Id. at 373.  Moreover, where previous opportunities to amend have already been granted, "the district court's discretion to deny leave to amend is particularly broad. . . ."  Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1072 (9th Cir. 2009).

Cobalis' Third Amended Complaint should be dismissed with prejudice as Cobalis has already been granted <u>four</u> opportunities to plead its claims.  Cobalis has failed to remedy previous deficiencies in its complaints despite having had the benefit of: (1) Yorkville's fully briefed Motion to Dismiss Cobalis' First Amended Complaint; (2) Yorkville's fully briefed Motion for Judgment on the Pleadings on Cobalis' Second Amended Complaint; (3) the two day Estimation Hearing on these same issues following over ten depositions, thousands of pages of discovery and trading documents, and consultation with experts; and (4) the benefit of this Court's written opinions in the Estimation Hearing and with respect to the Order Dismissing the Second Amended Complaint.  Cobalis has failed to state a claim because Cobalis <u>cannot</u> state a claim against Yorkville.  Cobalis should not be granted a fifth opportunity to waste judicial resources or Yorkville's time, and, as a result, the Third Amended Complaint should be dismissed with prejudice.

## <u>CONCLUSION</u>

For the reasons stated above, Yorkville respectfully request that this Court dismiss Cobalis' Third Amended Complaint in its entirety.

Dated: January 24, 2011

FOLEY & LARDNER LLP
KEITH C. OWENS


*/s/ Keith C. Owens*
Keith C. Owens

BAKER BOTTS L.L.P.
Richard B. Harper
30 Rockefeller Plaza
New York, NY  10112

BAKER BOTTS L.L.P.
C. Luckey McDowell
2001 Ross Avenue
Dallas, Texas  75201-2980

Attorneys for Defendants
YA GLOBAL INVESTMENTS, L.P. AND
YORKVILLE ADVISORS LLC, F/K/A
CORNELL CAPITAL PARTNERS, L.P.